1   ISMAIL J. RAMSEY (CABN 189820)
    United States Attorney
2
    THOMAS A. COLTHURST (CABN 99493)
3   Chief, Criminal Division

4   ROBERT D. REES (CABN 229441)
    BENJAMIN K. KLEINMAN (NYBN 5358189)
5   Assistant United States Attorneys

6       1301 Clay Street, Suite 340S
        Oakland, California 94612
7       Telephone: (510) 637-3680
        FAX: (510) 637-3724
8       Robert.rees@usdoj.gov

9   Attorneys for United States of America

10                      UNITED STATES DISTRICT COURT

11                     NORTHERN DISTRICT OF CALIFORNIA

12                        SAN FRANCISCO DIVISION

13
    UNITED STATES OF AMERICA,            )   CASE NO. 19-cr-0404-SI
14                                       )
            Plaintiff,                   )
15                                       )   **UNITED STATES' OPPOSITION TO**
         v.                              )   **DEFENDANT'S MOTION FOR BAIL PENDING**
16                                       )   **APPEAL**
    ALAN SAFAHI,                         )
17                                       )
            Defendant.                   )
18                                       )
    _____ )
19

20                        **I.    INTRODUCTION**

21          Having been duly convicted and sentenced, and on the eve of his self-surrender date, the

22   defendant now moves for bail pending appeal.  Because Safahi is a convicted felon, including for an

23   egregious money laundering charge involving him purchasing a home with his victims' money after a

24   lengthy fraud scheme, and because he has no meritorious basis for his appeal, this Court should deny

25   that request.  Because this Court is intensely familiar with the facts of this case, no separate factual

26   discussion is included.

27                        **II.   DISCUSSION**

28          When Congress enacted the Bail Reform Act, it "shifted the burden of proof from the

government to the defendant" with respect to demonstrating the propriety of remaining free on bail, pending appeal. *United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985). Thus, it is the defendant's burden to overcome the presumption that he should be detained while his appeal is pending. *See United States v. Montoya*, 908 F.2d 450, 451 (9th Cir. 1990). Safahi cannot meet that burden.

### A.    Safahi Is a Financial Danger to the Community

According to 18 U.S.C. § 3143(b)(1), a person "who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal," must be detained unless he or she can meet a narrow exception. 18 U.S.C. § 3143(b)(1). In order for Safahi legally to be entitled to release pending appeal, the Court must first determine, by clear and convincing evidence, that he is "not likely to flee or pose a danger to the safety of any other person or the community." § 3143(b)(1)(A). Contrary to that standard, there is overwhelming evidence that Safahi poses a true and present danger to others and the community; not a violent kind of danger, but rather a financial one. *See United States v. Reynolds*, 956 F.2d 192 (9th Cir. 1992) (recognizing that "pecuniary or economic harm" can constitute danger within the meaning of § 3143(b)).

Safahi's brazen and years-long schemes to skim money from his customers and lie to Sunrise Banks to obtain that money are well known to this Court and involved a near-constant use his own lies, along with his power as a CEO to use his employees to lie for him, in order to cheat his victims, including Sunrise Banks, his customers, and others, of money and property so that he could line his own pockets. To this day, Safahi maintains that his actions were innocent and appropriate. Allowing a man who believes he is entitled to lie, cheat, and steal from others to roam free in the community is a dangerous proposition.

Because Safahi cannot establish by clear and convincing evidence that he isn't likely to "pose a danger to the safety of any other person or the community," his motion for bail pending appeal must be denied. § 3143(b)(1)(A).

### B.    Safahi Has No Claim that Raises a Substantial Question of Fact or Law on Appeal

Even if Safahi had not demonstrated he is a financial danger to the community by his long course of demonstrated fraudulent conduct, he still could not qualify for bail pending appeal. In addition to that standard, Safahi must also be detained pending appeal unless he can demonstrate that his appeal "is not

for the purpose of delay and raises a substantial question of law or fact likely to result in (i) reversal; (ii) an order for a new trial; (iii) a sentence that does not include a term of imprisonment; or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."  § 3143(b)(1)(B).

The "substantial question" requirement defines the level of merit required of the question presented.  *United States v. Handy*, 761 F.2d 1279, 1280 (9th Cir. 1985).  A "substantial question" is one that may be "fairly debatable" or "fairly doubtful," and must present "something more than the absence of frivolity" or issues "debatable among jurists of reason."  *Id*. at 1281–83.

The other requirement, the "likelihood of reversal or new trial," defines the "type of question that must be presented" for appeal.  *Id*. at 1281.  The analysis "does not involve assessing the likelihood that a reversal will occur in the particular case," *United States v. Garcia*, 340 F.3d 1013, 1020 n.5 (9th Cir. 2003), but instead if the question presented is "so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial."  *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985).

Safahi purports to raise several qualifying questions, but none are substantial and none are likely to result in a reversal or a sentence lower than the duration of his appeal.  A discussion of each follows.

**1.  The Sunrise Banks Contract**

The defendant's first argument revolves around the contract he caused to be signed with Sunrise Banks.  The defendant has long tried to assert that this is not a criminal case, but a civil contract dispute, but there has never been any merit to that claim.

Safahi claims the government had to prove his fraudulent intent at the time he signed his contract.  Not only is this not accurate as a matter of controlling law, the government clearly proved that he did have that intent throughout the course of his fraudulent conduct, and including when he signed the contract with Sunrise Banks.

The contract itself is strong evidence that he created the pretense that he would fully fund the cards, and his behavior thereafter is strong evidence that he never intended to abide by that contract.  Ms. Pfeifle testified that it was her "understanding from the beginning that the whole premise of the relationship was that it was a fully funded program."  Pfeifle Tr. at 169.  Of course, this premise cannot

have been created or maintained by Safahi solely from the contract given that Ms. Pfeifle never even saw it.  Pfeifle Tr. at 272.  The defendant maintained this false pretense in numerous email communications with Sunrise Banks employees, even when specifically reminded of his promise to fully fund the cards.  In at least one instance, Safahi made the specific false representation that "[w]e actually think we are overfunded," which Ms. Pfeifle understood to mean that CardEx had "more money sitting in [their] account than they have loads on the cards."  Ex. 42; Pfeifle Tr. at 165.  The false representations by Safahi in furtherance of his fraudulent scheme also exist separate and apart from the contract.  And, of course, he created the Funding on Demand system from the very beginning of the working relationship with Sunrise Banks.

Safahi did not just breach the Sunrise Banks contract.  While we can never inspect the mind of any individual, the evidence of Safahi's debts to his previous bank showed that he had every motivation to and reason to have had the intent to defraud Sunrise Banks from the moment the contract was signed, with all of his actions thereafter confirming that intent.  The defendant continues to cite out-of-circuit authority for the idea that in a fraud case involving a contract, there is a special rule that the government must prove that the defendant intended to breach the contract before signing it.  But the evidence is clear that Safahi never had any intention of complying with the fully funded aspect of the contract.  More importantly, as the defendant himself concedes, "fairly debatable" questions for purposes of the Bail Reform Act, are "novel or cannot readily be answered by controlling precedent."  Def. Mot. at 4.  Safahi has cited no "controlling precedent" in this Circuit in support of his "special rule" about contract cases, so his claim is not "fairly debatable" here.[1]

**2.  Safahi Effectively Signed the Sunrise Banks Contract**

Yet again, Safahi makes much of the fact that he did not personally sign the Sunrise Banks contract, this time pitching it as a constructive amendment of the indictment.  First, the evidence overwhelmingly shows that he created and maintained the false pretense to Sunrise Banks that he would fully fund the cards through a wide variety of actions separate and apart from just the contract, so this

---

[1] Safahi's reference to his query about who would be responsible for his losses if he pulled the plug on his business as somehow favorable to him is wholly without merit.  To the contrary, this evidence simply proved his criminal intent to leave Sunrise Banks to foot his fraudulent bill for money he had already absconded with.

1    argument does not go to the heart of the fraud scheme as alleged—as stated before, the contract was

2    *evidence* of Safahi's fraud, not the entire basis of it.  Moreover, as discussed in the government's

3    opening trial brief, such a claim could, at best, serve as the basis for a claim of variance, not a

4    constructive amendment as the defendant now pretends.  *See, e.g., United States v. Von Stoll,* 726 F.2d

5    584, 585-86 (9th Cir. 1984) (upholding a guilty verdict when the indictment alleged that the defendant

6    took $10,000 from a Mr. McCallum while the proof at trial showed that he took it from a Mr. Hofer, and

7    concluding that the identity of the victim was irrelevant to the defendant's culpability).

8         In any event, as also discussed in the government's post-trial briefing, and held by the Court in

9    its order of conviction, there could hardly be a stronger case that Safahi effectively signed the contract

10   than in this case based on the law of agency, a concept the government repeatedly relied upon in

11   admitting emails and other documents written by Safahi's employees over hearsay objections under Fed.

12   R. Evid. 801(d)(2)(D)—legally and factually, Safahi is responsible for the contract with Sunrise Banks

13   as the owner of CardEx even though he sent his agent, employee, and son actually to sign it.

14   Accordingly, Safahi has no meritorious claim regarding this argument.

15       **3.  Loss Amount**

16        The defendant also bases his purportedly meritorious appeal on the loss amount determined by

17   the Court, emphasizing that it accepted neither his assertion of no loss or the government's reliance on

18   the loss set forth by the Court in its order of conviction.  This makes little sense.  If the Ninth Circuit

19   believes the loss is what the government pointed to in the Court's order of conviction, which was two

20   levels higher than what the Court ultimately found, the best Safahi can hope for is that the Ninth Circuit

21   affirms the sentence, as the alternative would be for it to remand for resentencing using the higher loss

22   amount.

23        On the other hand, Safahi's sentence was imposed essentially *as if there were only the losses he*

24   *acknowledges*, due to the substantial downward departure it afforded at Probation urging.  In his motion,

25   Safahi only challenges the loss amount aspect of his Guidelines calculation, which the Court determined

26   added 14 to his Offense Level.  What Safahi does not challenge is his base offense level of 7, the

27   sophisticated means enhancement of 2, the money laundering enhancement of 1, and the organizer and

28   leader enhancement of 4.  Def. Mot. at 22.  Safahi further concedes that evidence supported at least a

$224,000 loss, which would add 10 levels pursuant to § 2B1.1(b)(1)(F).[2]  Def. Mot. at 15.  This would bring his adjusted Offense Level to 24, and with a Criminal History Category of I, a Guidelines-advised sentence of 51-63 months, well above the 40-month sentence it imposed.

Even with no loss at all, and an Offense Level of 14, the defendant concedes he still would be facing a Guidelines-advised range of 15-21 months.  The defendant himself asserts that the average time to resolve a criminal appeal in the Ninth Circuit is 12.1 months.  Def. Mot. at 23.  In order to qualify for bail pending appeal, it is the defendant's burden to show that "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."  § 3143(b)(1)(B).  But while Safahi has not yet surrendered to serve his sentence, he already started his appellate process more than two months ago on February 16, 2023 when he filed his notice of appeal.  Dkt. 164.  His math does not work out:  with only an estimated ten more months to go in his appeal process and a *best case* Guidelines-advised sentence of 15-21 months, with numerous other possible higher outcomes as discussed above, he will nearly certainly still be serving a valid sentence even if he prevails on this ground, and thus cannot qualify for bail.

### 4. Suppression of Google Search Warrants

The defendant next claims that the search warrants obtained in 2015 and 2019 in this case are likely to be suppressed on appeal.  This is a surprising claim with respect to the 2019 warrant, which was already suppressed in its entirety by this Court.  Accordingly, it cannot serve as a basis for his bail pending appeal.

With respect to the 2015 search warrant, the defendant omits a critical aspect of the proceedings: he waived the suppression issue by claiming on October 9, 2020, the Rule 12 pretrial motions deadline, that "Safahi does not have any pretrial motions to file."  That basis alone should prevent him from pursuing the issue on appeal.  *See United States v. Gonzales*, 749 F.2d 1329, 1336 (9th Cir. 1984) ("We also note that appellant's last-minute request for a voluntariness ruling should have been raised at the pretrial suppression hearing.  Fed.R.Crim.P. 12 provides that failure to move for suppression of evidence

---

[2] The defendant's claim that this amount would be reduced by the civil settlement CardEx supposedly later paid to Sunrise Banks is wrong as a matter of law.  *See* § 2B1.1 Application Note 3(E)(i) (disallowing credits to loss occurring after the detection of the offense); *United States v. Martin*, 796 F.3d 1101, 1108 (9th Cir. 2015) (citing same).

at the time set by the court waives any objections to admission.").

In any event, the defendant's suppression motion was based on the claim that the government cannot search the "premises" of email accounts for relevant information that is specified in the warrant and its attachments.  The Ninth Circuit has already rejected that argument, and its opinion to that effect is binding on this appeal.  *See United States v. Flores*, 802 F.3d 1028, 1044–45 (9th Cir. 2015) (rejecting a defendant's motion to suppress a warrant on particularity grounds requiring Facebook to disclose the entire contents of an account for subsequent search by the government for relevant evidence).

Indeed, the defendant's claim relies on the language set forth in Attachment A describing the "place to be searched" (here, Google accounts) while simultaneously ignoring Attachment B describing the things to be searched *and* Attachment C setting forth the standards law enforcement would undertake and limitations it would be subject to in reviewing the information it obtained.  The defendant's attempt to suppress the 2015 search warrant was fully briefed and considered by this Court and was never a close question, particularly given the wide latitude law enforcement is given with respect to the particularity of a warrant.  *See, e.g., United States v. Wong*, 334 F.3d 831, 836-38 (9th Cir. 2003) (upholding warrant for computer material as specific and particular in part due to language merely stating that the officers could seek to "obtain data as it relates to this case").

And, of course, because the government lost most of the evidence, only a tiny portion of the evidence potentially obtained from it was actually introduced at trial and thus subject to suppression, and the Court found all of it to be relevant and admissible.  The agent's good faith reliance on the warrant in obtaining the materials he retained and the government introduced is therefore clear and unlikely to result in suppression even if there were other issues with the warrant.  *See, e.g., United States v. Schesso*, 730 F.3d 1040, 1050-51 (9th Cir. 2013) (applying *Leon* good faith exception to overbreadth and lack-of-computer-search-protocol warrant suppression claims).

### 5.   Failure to Preserve Evidence

The defendant saves an especially weak claim for last.  There is no dispute the government lost evidence in this case.  But the Court had a full evidentiary hearing on the matter with the agent who lost the evidence and determined that there was no bad faith on his part, and no violation of the defendant's due process rights given his inability to point to any prejudice, such as potentially exculpatory material

1    that might have existed.

2          The Court's factual determinations on these matters, such as the agent's credibility, will be

3    reviewed for clear error on appeal, an extremely high burden the defendant will almost certainly not be

4    able to meet in this case after having been given a full opportunity to cross-examine the agent and

5    litigate the issue.  *See, e.g., United States v. Malone,* 947 F.2d 951 (9th Cir. 1991) ("We find no direct

6    precedent as to the standard of review to apply to a trial court's refusal to dismiss on account of the

7    destruction of potentially exculpatory evidence. … Since it appears that Malone will not prevail on this

8    issue even under the more favorable de novo standard, we assume that the de novo standard of review

9    applies except when we review determinations of credibility and historic fact, which we review for clear

10   error.").  Accordingly, the defendant cannot meet his burden of establishing that this issue raises a

11   "substantial question" on appeal.  His motion for bail pending appeal must therefore be denied.

12                                 **III.   CONCLUSION**

13         The defendant cannot meet his burden of establishing the availability of bail pending appeal,

14   both because he is a financial danger to the community and because he presents no substantial question

15   of law or fact on appeal.  Accordingly, his motion for bail pending appeal must be denied.

16

17   DATED: April 21, 2023                       Respectfully submitted,

18                                     ISMAIL J. RAMSEY
                                     United States Attorney

19

20

21                                   _____/s_____
                                     ROBERT DAVID REES

22                                   BENJAMIN K. KLEINMAN
                                     Assistant United States Attorneys

23

24

25

26

27

28