1    BOERSCH & ILLOVSKY LLP
     Martha Boersch (State Bar No. 126569)
2    martha@boersch-illovsky.com
     Matthew Dirkes (State Bar No. 255215)
3    matt@boersch-illovsky.com
     1611 Telegraph Ave., Ste. 806
4    Oakland, CA 94612
     Telephone: (415) 500-6640
5
6    Attorneys for Defendant
     Alan Safahi
7
8
9                        UNITED STATES DISTRICT COURT
10                     NORTHERN DISTRICT OF CALIFORNIA
11                          SAN FRANCISCO DIVISION
12
13   UNITED STATES OF AMERICA,              Case No. 19-cr-0404-SI
14                    Plaintiff,            **REPLY IN SUPPORT OF MOTION FOR
                                            RELEASE PENDING APPEAL**
15            v.
                                            Judge:  Honorable Judge Susan Illston
16   ALAN SAFAHI,                           Date:   April 28, 2023
                                            Time:   11:00 a.m.
17                    Defendant.
18
19
20
21
22
23
24
25
26
27
28

1    Alan Safahi submits this reply to the government's opposition to bail pending appeal.

2                                    **ARGUMENT**

3    **I.    Continued Release Pending Appeal Presents No Risk of Danger**

4          Mr. Safahi has established that permitting him to remain on release during the pendency of his

5    appeal would present neither a risk of flight nor danger to the community.  18 U.S.C. § 3143(b); ECF

6    No. 176 at 5-6.  The government concedes that Mr. Safahi is not a flight risk.  ECF No. 178 at 2.

7          The government claims that Mr. Safahi's continued release would pose a risk of "financial

8    danger" to the community, but the government offers nothing to support that contention other than

9    Mr. Safahi's convictions in the instant case.  The government ignores that the offense conduct

10   occurred ten years ago.[1]  In the decade since, Mr. Safahi has lived a lawful life.  Prior to the offense

11   conduct, Mr. Safahi had never been convicted, or even formally accused, of anything representing a

12   "financial danger" to the community.

13   **II.   Mr. Safahi Will Raise Non-Frivolous, Fairly Debatable Issues on Appeal**

14         As established in his motion, the claims Mr. Safahi intends to raise on appeal will include

15   substantial issues that are fairly debatable.

16       **A.  Whether the Government Had to Prove that Mr. Safahi Possessed an Intent**
17            **to Defraud at the Time the Contract Was Entered Is a Substantial and Fairly**
                 **Debatable Legal Issue for Appeal**

18         The first claim Mr. Safahi will raise is whether the government was required – but failed – to

19   prove that he possessed an intent to defraud Sunrise Banks at the time the contract was executed.

20   ECF No. 176 at 6-9.  In response, the government first argues that it had no such obligation because

21   Mr. Safahi's argument is "not accurate as a matter of controlling law."  ECF No. 178.  But the

22   government has never identified any such "controlling law."  As we demonstrated in our motion, the

23   Second Circuit has addressed this issue head on.  It concluded that where, as here, the alleged fraud

24   arises from a commercial contract, the government must prove, *inter alia*, an intent to defraud *at the*

25

26   ───────────────
           [1] The government states – falsely – that Mr. Safahi engaged in a "years-long scheme."  ECF.
27   No. 178 at 2.  In its post-trial brief, the government conceded that, at most, the scheme lasted less
     than a year, beginning in November 2013 and ending in September 2014.  ECF No. 142 at 11
28   (characterizing the scheme as a "nearly year-long fraud scheme").

                                     1          REPLY IN SUPPORT OF MOTION FOR

*time the contract was signed.  U.S. ex rel. O-Donnell v. Countrywide Home Loans, Inc.*
*("Countrywide"),* 822 F.3d 650 (2d Cir. 2016).  The Seventh Circuit likewise has held that a
"[b]reach of contract is not fraud" unless one enters into the contract "with the intent not to keep" the
promises contained in it.  *Perlman v. Zell,* 185 F.3d 850, 853 (7th Cir. 1999); *see also Corley v.*
*Rosewood Care Ctr*., 388 F.3d 990, 1007 (7th Cir. 2004) (recognizing that the fact the defendant
"subsequently broke a promise is not evidence that it never intended to keep the promise when
made"; "[a]t most this is evidence of breach of contract, not fraud," which "requires much more than
simply not following through on contractual or other promises.  It requires a showing of deception at
the time the promise is made.  A subsequent breach, although consistent with deceptive intent is not
in and of itself evidence of such an intent.").

Issues raised on appeal may be fairly debatable if they are novel or cannot be readily
answered by controlling precedent.  *United States v. Handy*, 761 F.2d 1279, 1281 (9th Cir. 1985).
Although the government cites that legal standard in its brief, it misapplies it.  ECF No. 178 at 4.  The
government argues that because Mr. Safahi does not point to "controlling" Ninth Circuit precedent,
the claim "is not 'fairly debatable here.'"  ECF No. 178 at 4.  But an appellant need not show that a
claim is governed by controlling precedent to raise a fairly debatable issue.  As *Handy* makes clear,
an appellant seeking release need only show that an issue might not be readily answered by
controlling precedent.  *Handy*, 761 F.2d at 1281.  Here, the government has not identified any
authority, controlling or otherwise, that is contrary to *Countrywide*, *Perlman*, and *Corley*.  The lack
of any such authority establishes that this is, at the very least, a fairly debatable issue.

As a fallback position, the government argues that it did in fact prove Mr. Safahi's intent to
defraud at the time the contract was signed.  That assertion is contrary to what the government said in
its post-trial brief, where it urged the Court to conclude that the scheme began in November 2013,
four months after the contract was signed in June 2013.  ECF No. 142 at 9 ("Funding on Demand
scheme was not implemented until the initial reports containing false balances were sent to Sunrise
Banks, which occurred in November 2013."); *see also id.* at 10 (claiming an email sent on November
9, 2013, was "mere days before the Funding on Demand scheme was implemented.").

REPLY IN SUPPORT OF MOTION FOR
                                        RELEASE PENDING APPEAL
                                        Case No.: 19-cr-0404-SI

Putting aside those concessions, the trial evidence simply does not support the government's argument that it proved an intent to defraud at the time the contract was signed.  The government offered no evidence that Mr. Safahi signed or had any involvement in the negotiation of the contract. The government offered no evidence that Mr. Safahi had any communications with anyone at Sunrise Banks until weeks after the contract was signed.  There were no emails between Mr. Safahi and anyone at the bank, or anyone at CardEx, discussing the terms of the contract before it was entered. No witness from the bank testified about any communications with – let alone promises by – Mr. Safahi before the contract was signed.  The government offered no evidence that Mr. Safahi even knew the terms of the agreement beforehand.

Nor does the Court's Special Findings of Fact and Order of Conviction from a Bench Trial, ECF No. 150, conclude that Mr. Safahi knew the terms of the contract before Sunrise Banks entered into it or made any promises to the bank to lure it into the contract.  Instead, the Court found that Mr. Safahi devised a scheme at some point after the contract was signed to mislead the bank into thinking that CardEx was providing a fully funded program when in fact the program was partially funded. Under *Countrywide* and *Perlman* that conduct may constitute a breach of contract but it is not criminal fraud.  At the very least, this issue is fairly debatable and satisfies the standard for release.

### B.  Whether Mr. Safahi's Conviction Was the Result of a Constructive Amendment Is a Substantial and Fairly Debatable Issue for Appeal

The second issue Mr. Safahi will raise on appeal is whether the government constructively amended the Indictment by convicting him based on facts different than those alleged in the Indictment.  In the Indictment, the scheme for both the bank and wire fraud counts rested on a promise *by Mr. Safahi* to Sunrise Banks *before* the contract was signed.  ECF No. 110, Superseding Indictment, ¶ 6.  As discussed above, the government presented no evidence that Mr. Safahi ever promised the bank anything prior to the execution of the contract.

In response, the government argues that the evidence "shows he created and maintained the false pretense to Sunrise Banks that he would fully fund the cards through a wide variety of actions separate and apart from just the contract . . . ."  ECF No. 178 at 4.  Even assuming the accuracy of

REPLY IN SUPPORT OF MOTION FOR
                                                        RELEASE PENDING APPEAL
                                                        Case No.: 19-cr-0404-SI

1  that characterization of the evidence *after* the contract was signed, it ignores the absence of any such

2  evidence *before* the contract was signed, which, again, was a key allegation in the Indictment.

3  The government also claims that "the contract was *evidence* of Safahi's fraud, not the entire

4  basis of it." ECF No. 178 at 5 (emphasis in original). That is materially different from the

5  allegations in the Indictment, which charged Mr. Safahi with bank and wire fraud for falsely

6  promising Sunrise Banks that a prepaid card program would be operated as a fully funded program

7  and that, "[i]n reliance on that promise, Sunrise Banks entered into the agreement." ECF No. 110 ¶

8  6. As set forth in the Indictment, the fraud was the promise, made before the contract was signed, to

9  fully fund the cards. The government's proof at trial did not show that.

10  As Mr. Safahi will show on appeal, the contract is not "evidence of" any fraud unless the

11  government proved that Mr. Safahi possessed an intent to defraud *at the time the contract was signed*.

12  Otherwise, the contract is simply an agreement between the two parties that sets forth their respective

13  obligations to each other. Even if the contract required full funding, the subsequent conduct of

14  providing partial funding may, at most, have been a breach of the contract. Absent fraudulent intent

15  at the time the contract was formed, such conduct would not be criminal fraud. *Countrywide*, 822

16  F.3d at 650; *Perlman*, 185 F.3d at 853.

17  The government also relies on "the law of agency" to argue that Mr. Safahi "effectively

18  signed the contract." ECF No. 178 at 5. Even if that were true, it would not alter the constructive

19  amendment claim, which rests on the government's failure to prove the central fraud allegation in the

20  Indictment: a false promise by Mr. Safahi to induce the bank to enter the contract.

21  The government also cites Federal Rule of Evidence 801(d)(2)(D) and its reliance on that rule

22  during trial to admit various emails. An evidentiary rule provides no basis for imposing criminal

23  liability. Whether emails may be admissible under Rule 801(d)(2)(D) in no way establishes that Mr.

24  Safahi can be guilty of fraud under a supposed "agency theory."

25  Moreover, that agency theory, also known as the responsible corporate officer doctrine, or

26  "Park Doctrine," has only been applied to strict liability misdemeanor offenses. *United States v.*

27  *Park*, 421 U.S. 658 (1975). The government cannot convict Mr. Safahi of a felony fraud offense

28

REPLY IN SUPPORT OF MOTION FOR
RELEASE PENDING APPEAL
Case No.: 19-cr-0404-SI

based simply on his ownership of the company.  The government must prove the conduct, knowledge, and intent of Mr. Safahi personally, including that he possessed an intent to defraud the bank when the contract was entered and falsely promised full funding to entice it into the contract.

The government's failure to prove Mr. Safahi's personal knowledge and intent constitutes a constructive amendment.  *United States v. Ward*, 747 F.3d 1184, 1191 (9th Cir. 2014) (mere "possibility" that "a conviction could be based on conduct *not* charged in the indictment" results in constructive amendment); *United States v. Choy*, 309 F.3d 602, 607 (9th Cir. 2002) (if defendant "could have" been convicted based on facts different from those in the indictment, there has been a constructive amendment and a fatal variance, which constitutes plain error and requires reversal); *United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir. 1984) (fatal variance occurs when "the evidence offered at trial proves facts materially different from those alleged in the indictment" and the variance affects the defendant's substantial rights).

This too presents a fairly debatable issue justifying release pending appeal.

### C.   Whether There Was Any Loss Is a Substantial and Fairly Debatable Issue for Appeal

Mr. Safahi will challenge the loss amount determined at his sentencing.  The Court ultimately concluded that the loss amount was slightly under $1.5 million.  But Sunrise Banks did not identify any loss.  Two representatives from the bank testified at trial.  Neither could identify any loss to the bank.  The bank submitted a victim impact statement prior to sentencing.  That statement identified no loss.  The bank shut down the card program within 72 hours after CardEx ceased operations.  If there had been any spend on the outstanding cards during that short window of time, the government offered no evidence of it.  The government sought no restitution for Sunrise Banks, the only identified victim of the bank fraud.  Mr. Safahi submits that for these reasons and those discussed in his motion and below, the loss amount, which doubled Mr. Safahi's adjusted offense level from 14 to 28, is a fairly debatable issue that satisfies the standard for release on appeal.

In response, the government first argues that Mr. Safahi has conceded that the loss was at least $224,000.  ECF No. 178 at 5-6.  Nonsense.  As Mr. Safahi has repeatedly argued, the government failed to prove any loss.  *E.g.*, ECF No. 156 at 5-7; ECF No. 176 at 14 ("On appeal, Mr.

REPLY IN SUPPORT OF MOTION FOR
RELEASE PENDING APPEAL
Case No.: 19-cr-0404-SI

Safahi will show that the government did not prove any *actual* – as opposed to hypothetical – loss to Sunrise Banks." (emphasis in original)).[2]

If on appeal Mr. Safahi successfully challenges the loss amount, it will likely result in "a reduced sentence to a term of imprisonment less than the total of time already served plus the expected duration of the appeal process."  18 U.S.C. § 3143(b)(1)(B)(iv).  Without the 14-level increase for loss, Mr. Safahi's adjusted offense level would be 14, resulting in a guideline calculation of 15-21 months.  Even if given a guideline sentence of 15 months, Mr. Safahi would probably end up serving about ten months in custody, with good time and First Step Act programming credits, and very well may be released earlier to a halfway house or home confinement given that he will be in the lowest BOP security classification.

### D.  The Appellate Claims Relating to Suppression of Evidence from Google and the Government's Failure to Preserve Evidence

As set forth in his motion, Mr. Safahi will raise on appeal fairly debatable claims regarding the overly broad search warrant to Google and the government's loss of evidence.  ECF No. 176 at 16-22.  The Court's rejection of these arguments, ECF Nos. 66, 68, does not help the government because an appellate claim "may be 'substantial' even though the judge or justice hearing the application for bail would affirm on the merits of the appeal."  *United States v. Handy*, 761 F.2d 1279, 1281 (9th Cir. 1985) (internal quotation marks omitted).  "[R]equiring the defendant to demonstrate to the District Court that its ruling is likely to result in reversal is tantamount to requiring the District Court to certify that it believes its ruling to be erroneous."  *Id.*

---

[2] As for the $224,000 figure, which the government has sought to ignore despite the fact that it came from its own agent, Mr. Safahi has both acknowledged the testimony and also shown that the "testimony, on its own and based as it is on hearsay, is inadequate to carry the government's burden of proof of loss . . . ."  ECF No. 156 at 7.

REPLY IN SUPPORT OF MOTION FOR
RELEASE PENDING APPEAL
Case No.: 19-cr-0404-SI

**CONCLUSION**

For all the reasons discussed above and in his motion, Mr. Safahi respectfully requests that the Court issue an order continuing his release under the present conditions for the duration of his appeal to the Ninth Circuit.

Respectfully submitted,

DATED: April 25, 2023

BOERSCH & ILLOVSKY LLP
MARTHA BOERSCH
MATTHEW DIRKES

*/s/ Martha Boersch*
Martha Boersch

Attorneys for
Alan Safahi